STATE of Wisconsin, Plaintiff-Respondent,

v.

R.R.E., Defendant-Appellant-Petitioner.

Supreme Court

*No. 89–1435. Submitted on briefs April 24, 1991.—Decided
June 11, 1991.*

(Also reported in 470 N.W.2d 283.)

For the defendant-appellant-petitioner there were briefs by *Mary E. Waitrovich,* Assistant State Public Defender.

For the plaintiff-respondent the cause was submitted on the brief of *James M. Freimuth,* Assistant Attorney General and *Donald J. Hanaway,* attorney general.

WILLIAM A. BABLITCH, J. R.R.E. seeks review of a court of appeals' decision which affirmed the circuit court's order dismissing R.R.E.'s petition for a reexamination hearing. R.R.E. contends that he is entitled to release from his not guilty by reason of mental disease or defect commitment because the circuit court failed to abide by the thirty day time limit for holding the hearing on his petition for reexamination as required by sec. 51.20(16)(c), Stats. Because we conclude that the legislature did not intend the release of criminally committed persons without a court determination that the individual may be safely released, we hold that R.R.E. is not entitled to release from his commitment. We also conclude, however, that the lower courts erred by dismissing R.R.E.'s petition. Accordingly, we affirm the court of appeals' determination that R.R.E. is not entitled to

release from his commitment. We reverse the court's decision dismissing R.R.E.'s petition for reexamination and remand the case to the circuit court for a hearing on the merits of R.R.E.'s petition.

In January, 1974, the defendant, R.R.E. was found not guilty by reason of mental disease or defect of one count of second-degree murder and one count of attempted murder. Pursuant to sec. 971.17, Stats., the circuit court committed R.R.E. to the State Department of Health & Social Services. Since the time he was initially committed, R.R.E. has petitioned the court for reexamination approximately thirteen times. Each time the petition was either withdrawn by R.R.E. or the court recommitted him after determining that it would be unsafe to release him into the community.

The petition for reexamination at issue in this case was dated May 2, 1988, and apparently mailed by R.R.E. on May 23, 1988. Due to various events related to court administration, the petition was lost for three months. There is no dispute that a hearing on the petition was required to be held within thirty days and that the required hearing was not held within that time period. On August 3, 1988, a hearing was held and R.R.E. moved to be released from his commitment for the court's failure to give him a hearing in conformity with the thirty day time limit set by sec. 51.20(16)(c), Stats. 1987–88 [All references in this opinion are to the 1987–88 statutes unless otherwise indicated].[1] Ultimately, on April

---

[1] **51.20 Involuntary commitment for treatment . . . .. (16)** . . . (c) If a hearing has been held with respect to the subject individual's commitment within 30 days of the filing of a petition under this subsection, no hearing shall be held. If such a hearing has not been held within 30 days of the filing of a petition, but has been held within 120 days of the filing, the court shall within 24 hours of the filing order an examination to be completed within 7 days by the appropriate county department under s. 51.42 or

13, 1989, the circuit court entered its order against R.R.E., which stated that "[p]ursuant to the decision in *State v. R.A.R.* the defendant's petition is hereby dismissed."

R.R.E. appealed and the court of appeals affirmed.

The primary issue in this case is whether the petitioner is entitled to release from his criminal commitment because the circuit court failed to abide by the statutory time limits for holding a hearing on his petition for reexamination pursuant to sec. 51.20(16)(c), Stats. We conclude that R.R.E. is not entitled to release from his commitment. The legislature did not intend the release of criminally committed individuals without a court determination that the individual may be safely released. The petitioner's right to an expeditious reexamination hearing is adequately preserved by his or her ability to compel a hearing through sec. 51.20(16)(i) or by a writ of mandamus, sec. 783.01. We also conclude that the lower courts erred by dismissing R.R.E.'s petition for reexamination as a consequence of the circuit court's failure to timely hear the petition.

The circuit court and the court of appeals both determined that this case was controlled by the court of appeals' decision in *State v. R.A.R.*, 147 Wis. 2d 218, 432 N.W.2d 685 (Ct. App. 1988), in which the court of appeals addressed the same issue raised in this case. R.A.R. argued, as does the petitioner in this case, that because his reexamination hearing was not held within the thirty day time limit required by sec. 51.20(16)(c), Stats., the court was required to discharge him from his criminal commitment because the statutory provision was mandatory. *Id.* at 222. The court of appeals con-

51.437. A hearing may then be held in the court's discretion. If such a hearing has not been held within 120 days of the filing, a hearing shall be held on the petition within 30 days of receipt.

cluded that discharge was not the proper remedy because the statute did not provide for such a remedy and nothing in the statute indicated a legislative intent to discharge a person when they had not received a timely hearing. *Id.* at 223-24. The court also noted:

> If the time limit is mandatory, then the only effect is to deprive the court of its competency to hear the petition. If the court lacks that competency, then R.A.R.'s petition must be dismissed. If his petition is dismissed, R.A.R. remains committed to the department, and he must again petition for reexamination. But since he does not request that relief, dismissal of his petition, we need not grant it. *Id.* at 223.

The court concluded by stating that "[w]e need not decide what remedy R.A.R. has, if any, for the court's failure to hold a timely hearing." *Id.* at 224.

R.R.E. vigorously contends that if *R.A.R.* is allowed to stand "absurd and Draconian consequences will surely result." R.R.E. argues that under *R.A.R.*, the only remedy available to the committed individual is dismissal of his or her petition. This "remedy," the petitioner contends, offers no recourse to the petitioner whatsoever as he or she is compelled to once again file a new petition that again may not be acted upon within the thirty day time limit. R.R.E. contends that under this "Catch-22" interpretation of sec. 51.20(16)(c), Stats., the committed individual could be permanently deprived of a reexamination hearing.

■

R.R.E. requests this court to overrule *R.A.R.* and to resolve the question of the appropriate remedy when the circuit court fails to hold a hearing on the petition within the mandatory time limits. To resolve the question of the appropriate remedy for a violation of the

petitioner's right to a reexamination hearing within the time limits specified by the statute, we must interpret secs. 971.17[2] and 51.20(16)(c), Stats.[3] The interpretation

[2] **971.17 Legal effect of finding of not guilty because of mental disease or defect. (1)** When a defendant is found not guilty by reason of mental disease or defect, the court shall order him to be committed to the department to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section.

(2) A reexamination of a defendant's mental condition may be had as provided in s. 51.20(16), except that the reexamination shall be before the committing court and notice shall be given to the district attorney. The application may be made by the defendant or the department . . .. If the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others, it shall order the discharge of the defendant or order his or her release on such conditions as the court determines to be necessary. If it is not so satisfied, it shall recommit him or her to the custody of the department . . ..

(3) If, within the maximum period for which a person could have been imprisoned if convicted of the offense charged, subject to s. 53.11 and the credit provisions of s. 973.155, the court determines after a hearing that the conditions of release have not been fulfilled and that the safety of the person or the safety of others requires that his or her conditional release be revoked, the court shall immediately order the person recommitted to the department, subject to discharge or release only in accordance with sub. (2).

(4) When the maximum period for which a defendant could have been imprisoned if convicted of the offense charged has elapsed, subject to s. 53.11 and the credit provisions of s. 973.155, the court shall order the defendant discharged subject to the right of the department to proceed against the defendant under ch. 51 . . ..

[3]We note that by 1989 Wisconsin Act 334, the legislature substantially altered the procedures for commitment and release of persons found not guilty of crimes by reason of mental disease or defect, including the time limits for holding a reexamination hearing. Under the revised sec. 971.17 1989–90, effective for offenses committed on or after January 1, 1991, more expansive time limits are provided for holding the reexamination hearing. These changes are not directly applicable here.

of statutes is a question of law that this court decides independently of the lower courts' decisions. *Eby v. Kozarek*, 153 Wis. 2d 75, 79, 450 N.W.2d 249 (1990).

The time provision applicable in this case states that "[i]f such a hearing has not been held within 120 days of the filing, a hearing shall be held on the petition within 30 days of receipt." Section 51.20(16)(c), Stats. The state concedes that the circuit court failed to comply with this provision. The parties dispute whether this provision is mandatory or directory. The parties also dispute the appropriate remedy.

This court has recognized that in determining whether a statutory provision is mandatory or directory, " 'as of every other question of statutory construction, *the prime object is to ascertain the legislative intent* . . ..' " *Worachek v. Stephenson Town School Dist.*, 270 Wis. 116, 120, 70 N.W.2d 657 (1955) (quoting 50 Am. Jur., Statutes, p. 47, sec. 24) (emphasis added). Although the use of the word "shall" in a statute suggests that the provision is mandatory, this court has often held that statutory time limits are directory despite the use of the word "shall." *Eby v. Kozarek*, 153 Wis. 2d at 79–80 (and cases cited therein). Consequently, the determination of whether "shall" is mandatory or directory is not governed by a *per se* rule. *See State ex rel. Jones v. Franklin*, 151 Wis. 2d 419, 428, 444 N.W.2d 738 (Ct. App. 1989) (Sundby, J., dissenting). "Shall" will be construed as directory if necessary to carry out the intent of the legislature. *See Eby*, 153 Wis. 2d at 75; *Karow v. Milwaukee County Civil Serv. Comm.*, 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978). Thus, we must examine the legislative intent to determine whether the statutory time limits should be construed as mandatory or directory.

■The factors which this court considers when determining whether the legislature intended a statutory provision to be mandatory or directory include " 'the objectives sought to be accomplished by the statute, its history, the consequences which would follow from the alternative interpretations, and whether a penalty is imposed for its violation.' " *Eby,* 153 Wis. 2d at 80 (quoting *State v. Rosen,* 72 Wis. 2d 200, 207, 240 N.W.2d 168 (1976)).

■We first consider the objectives the legislature sought to achieve through secs. 971.17 and 51.20(16)(c), Stats., which together provide the procedural requirements for obtaining a reexamination hearing. Those objectives were discussed by this court in *State v. Field,* 118 Wis. 2d 269, 281–82, 347 N.W.2d 365 (1984):

> Once the defendant is committed, the sole focus is on evaluating his or her present mental condition, not on the defendant's mental condition prior to or at the time of the criminal act. *Because the defendant has committed a crime, the public is entitled to the assurance that the defendant's mental condition and dangerousness will be thoroughly evaluated under circumstances that will best accomplish this objective, while ensuring that the defendant's right to be released if he or she has recovered or is no longer dangerous is protected.* The commitment of a defendant under sec. 971.17(1) ensures that the defendant will receive an evaluation of his or her present mental condition that is free from the time pressures of the trial and post-trial hearings. In addition, the defendant has an opportunity for reexamination and release under the procedures set forth in secs. 971.17(2) and 51.20(16)(c). (Emphasis added.)

As *Field* indicates, the dual objectives of the reexamination process are to protect the safety of the public and the committed individual and to provide the committed individual with periodic reexamination hearings in order to preserve his or her right to release when the individual is no longer dangerous.

The thirty day requirement of sec. 51.20(16)(c), Stats., furthers the legislature's goal of ensuring that the right of committed persons to regular reexamination hearings is not frustrated by delaying tactics of the court or the state. Section 971.17 protects the public by expressly providing only two avenues of release for the committed individual. First, release must be granted "[i]f the court is satisfied that the defendant may be safely discharged or released without danger to himself or herself or to others . . . ." Second, sec. 971.17(4) provides that the defendant's release must be granted "[w]hen the maximum period for which a defendant could have been imprisoned if convicted of the offense charged has elapsed, subject to s. 53.11 and the credit provisions of s. 973.155 . . . ."

With these objectives in mind, we consider the consequences of the two alternative interpretations of the time limitation of sec. 51.20(16)(c), Stats., posed by the parties.

The consequences of a construction of the time limit as mandatory are serious. If we determined that criminally committed individuals must be released from their commitment for the violation of their statutory right to a reexamination hearing within thirty days, we would place a heavy burden on society for even nominal procedural delays of the court. The legislature has made it clear that, for the protection of public safety, criminally committed individuals should only be released

upon the expiration of the maximum period of their commitment or after a court has determined that the individual is no longer dangerous to himself or herself or to others. This safeguard ensures that the defendant receives proper evaluation and treatment before being released in order to protect society from possibly being again victimized by the individual's actions. Thus, a mandatory construction of the statute that entails release of the petitioner is directly contrary to sec. 971.17, Stats., and one of the objectives of the reexamination process.[4]

■

Had the legislature intended to provide a third avenue for release, when the time limits for holding the reexamination hearing are violated, it seems likely it would have expressly stated its intention in order to alert the circuit courts of the extreme consequences for failing to comply with the time limitations. We have often recognized that the absence of a penalty provision suggests that the statutory provision is directory. *See, e.g., Eby,* 153 Wis. 2d at 81; *Karow,* 82 Wis. 2d at 571-72. If the legislature determines that such a penalty is necessary to protect the right of criminally committed persons to a

---

[4]Section 51.20(16)(c), Stats., also provides that if a hearing has not been held within 30 days, but has been held within 120 days of the filing of the petition, "the court shall within 24 hours of the filing order an examination to be completed within 7 days by the appropriate county department . . .." If violation of the thirty day limit were regarded as mandatory and requiring release, then violation of these time limits would also require release. Release for a violation of the 7 day provision, and especially for a violation of the 24 hour provision, would be an excessive remedy in proportion to the degree that strict observance of these time limits is necessary to ensure a prompt hearing.

prompt reexamination hearing, it is up to the legislature to enact such a remedy.

In addition, we note that other state courts have also concluded that the policy of protecting the public from the early release of criminally committed individuals who may remain dangerous to the public outweighs the competing interest of the defendant in receiving his hearing in strict accordance with the statutory time limitations for the reexamination hearing. *See Augustowski v. Com'r, Office of Mental Health,* 118 Misc. 2d 277, 460 N.Y.S.2d 709 (Sup. Ct. 1983); *Valleur v. McGee,* 42 Or. App. 391, 600 P.2d 914, 915 (1979); *Harvey v. State,* 441 A.2d 1094 (Md. Ct. Spec. App. 1982).

We recognize the strong competing policy of requiring courts to strictly follow procedural rules and time limitations which are designed to ensure that the right of committed persons to a hearing to review the need for their continued confinement is not unduly delayed or effectively denied by a court's delays. We indicated in *Field,* 118 Wis. 2d at 280–81, that without the right to periodic reexamination hearings, the automatic commitment provision of sec. 971.17(1), Stats., would be unconstitutional. *Cf. St. ex rel. Watts v. Combined Community Services,* 122 Wis. 2d 65, 362 N.W.2d 104 (1985) (imposing an annual review requirement for protectively placed persons to uphold the constitutionality of sec. 55.06, Stats.). Furthermore, we have stated that "where the failure to act within the statutory time limit does work an injury or wrong, this court has construed the time limit as mandatory." *Karow,* 82 Wis. 2d at 572. Certainly, the failure to act within thirty days inflicts some injury upon R.R.E., as he remains committed while awaiting a hearing and, if recommitted, his opportunity

711

to petition for his next hearing is pushed back to a later date.

We conclude, however, that the objective of the thirty day time limit of providing the petitioner with a prompt reexamination hearing will not be significantly affected by our determination that the provision is directory. The committed individual's ability to compel a hearing through sec. 51.20(16)(i),[5] Stats., or by a writ of mandamus, sec. 783.01, when the circuit court fails to comply with the statute, ensures that the reexamination hearing will be promptly held as intended by the legislature. Although this scheme puts the burden on the defendant to petition the court, the requirement is not inconsistent with the procedure for obtaining a reexamination hearing, which requires the petition for reexamination to be made by the committed individual or someone on his behalf.

R.R.E. contends that if we conclude that sec. 51.20(16)(c), Stats., is directory, our decision will conflict with the court of appeals' decisions in *State ex rel. Lockman v. Gerhardstein*, 107 Wis. 2d 325, 320 N.W.2d 27 (Ct. App. 1982) and *In Matter of Guardianship of N.N.*, 140 Wis. 2d 64, 409 N.W.2d 388 (Ct. App. 1987). *Lockman* concerned an original civil commitment in which the circuit court failed to hold a final commitment hearing within fourteen days of Lockman's detention as required by sec. 51.20(7)(c). The court of appeals held that the statutory time limit was mandatory and that the circuit court lost jurisdiction over Lockman as a

---

[5] **51.20 . . . (16)(i)** Subsequent reexaminations may be had at any time in the discretion of the court but may be compelled after 120 days of the preceding examination in accordance with this subsection. All petitions for reexamination must be heard within 30 days of their receipt by the court.

consequence of its failure to hold the final commitment hearing in accordance with the statute. As a result, the court of appeals concluded that the circuit court should have dismissed the pending commitment proceedings against Lockman.

In *N.N.,* which concerned an original protective placement proceeding, the circuit court failed to hold a final hearing within thirty days of N.N. being taken into custody as the court found was required under sec. 55.06(11)(c), Stats. Relying on *Lockman,* the court of appeals determined that the time limit was jurisdictional and that the circuit court's failure to comply with those limits required dismissal of the petitions for guardianship and protective placement pending against N.N.

*Lockman* and *N.N.* are not inconsistent with our decision here because those cases addressed considerably different fact situations. In each of those cases, the individual was being held in temporary custody awaiting a final hearing in her action. No full due process determination of the necessity of custody had been afforded to the appellants. We recognized in *Field,* 118 Wis. 2d at 282–83, the considerable differences between an original civil commitment proceeding and a criminal commitment:

> [W]hen a defendant is committed pursuant to sec. 971.17(1), Stats., he or she has already been found beyond a reasonable doubt to have committed a criminal act, which is unquestionably conduct outside the range of acceptable behavior. Thus, commitment under those circumstances does not involve the concern associated with civil commitment that the person is being committed for conduct within the range of socially acceptable behavior. In addition, the fact that a person who has been found not guilty by reason of mental disease has committed a criminal act

demonstrates a degree of dangerousness to society that may be lacking in the actions of one who is civilly committed.

Thus, in *Lockman* and *N.N.*, there was a much greater infliction of injury upon the individual who was deprived of her liberty, a much more substantial danger that the individual was being held unjustifiably, and the potential danger to the public safety was much more speculative. Moreover, in both *Lockman* and *N.N.*, the state had the burden of obtaining a hearing to maintain custody of the individuals. Here, it is the committed individual who must petition for a hearing to determine whether commitment should be continued.

■■■

We must also consider whether the lower courts' decision to dismiss R.R.E.'s petition was correct. The lower courts concluded that *R.A.R.* established that the appropriate remedy for violation of the statutory time limit for holding the reexamination hearing was to dismiss the petition. We conclude that the lower courts erred by dismissing the petition. The legislature did not intend the circuit court to lose competence to exercise its jurisdiction over reexamination petitions that are not timely heard by the court.

■■■

Because we find the statutory time limit to be directory, we need not address the issue of the proper remedy if the provision is mandatory. We agree with R.R.E., however, that to conclude that the only remedy available to him in this case is dismissal of his petition would work an absurd and unreasonable result that was not intended by the legislature. Dismissal of the petition only serves to punish the already aggrieved petitioner. For that reason, to the extent that *R.A.R.* is interpreted as holding that the appropriate remedy for a court's fail-

ure to hold a timely reexamination hearing on a petition for reexamination is dismissal of the petition, *R.A.R.* is overruled. If the circuit court has violated the statute's time limitation, then the court's duty when it becomes aware of the error is to hold the reexamination hearing as quickly as possible. This duty is, of course, enforceable by mandamus.

We wish to emphasize that our conclusion that the thirty day time limit of sec. 51.20(16)(c), Stats., is directory should not be read to imply that the provision is merely discretionary or permissive. The legislature intended that the time limit be strictly followed, despite not intending to provide the petitioner with the extreme remedy of release. Our determination that the provision is directory simply reflects that the legislature did not intend that the court dismiss the petition or release the petitioner for a violation of the statutory time limits.

For the reasons stated above, we hold that the petitioner is not entitled to release from his commitment by reason of the court's failure to timely hold the reexamination hearing in accordance with the thirty day time limit of sec. 51.20(16)(c), Stats. We also conclude that the lower courts erred by dismissing the petition for reexamination. Accordingly, we affirm the court of appeals' determination that R.R.E. is not entitled to release from his commitment. We reverse the portion of the court of appeals' decision dismissing R.R.E.'s petition and remand to the circuit court for a hearing to determine whether R.R.E. is entitled to release under the standards of sec. 971.17.

*By the Court.*—The decision of the court of appeals is affirmed in part, reversed in part, and cause remanded for further proceedings consistent with this opinion.